Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/07/2026 08:10 AM CDT

**Richard G. Schuemann, appellant, v.
Brent D. Timperley, M.D., appellee.**

___ N.W.3d ___

Filed August 7, 2026.    No. S-25-079.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews
the district court's grant of summary judgment de novo, viewing the
record in the light most favorable to the nonmoving party and drawing
all reasonable inferences in that party's favor.

2. ____: ____. A grant of summary judgment will be affirmed if the plead-
ings and admitted evidence show that there is no genuine issue as to any
material facts or as to the ultimate inferences that may be drawn from
the facts and that the moving party is entitled to judgment as a matter
of law.

3. **Summary Judgment.** Summary judgment is proper only when the
pleadings, depositions, admissions, stipulations, and affidavits in
the record disclose that there is no genuine issue as to any material fact
or as to the ultimate inferences that may be drawn from those facts and
that the moving party is entitled to judgment as a matter of law.

4. **Summary Judgment: Proof.** The party moving for summary judgment
must make a prima facie case by producing enough evidence to show
the movant would be entitled to judgment if the evidence were uncon-
troverted at trial. If the moving party makes a prima facie case, the bur-
den shifts to the nonmovant to produce evidence showing the existence
of a material issue of fact that prevents judgment as a matter of law.

5. ____: ____. If the burden of proof at trial would be on the nonmov-
ing party, then the party moving for summary judgment may satisfy
its prima facie burden either by citing to materials in the record that
affirmatively negate an essential element of the nonmoving party's claim
or by citing to materials in the record demonstrating that the nonmoving
party's evidence is insufficient to establish an essential element of the
nonmoving party's claim.

6. **Malpractice: Physician and Patient: Informed Consent: Proof: Proximate Cause.** To assert a medical malpractice claim on a theory of lack of informed consent, a plaintiff must establish the same elements necessary to assert any medical negligence claim: (1) the applicable standard of care, (2) that the defendant(s) deviated from that standard of care, and (3) that this deviation was the proximate cause of the plaintiff's harm.

7. **Malpractice: Physician and Patient: Proof: Proximate Cause.** In a medical malpractice action, proximate causation requires proof necessary to establish that the physician's deviation from the standard of care caused or contributed to the injury or damage to the plaintiff.

8. **Malpractice: Physician and Patient: Informed Consent: Proof: Proximate Cause.** In medical malpractice actions based on a lack of informed consent, plaintiffs must prove both that a reasonable person in their situation would have refused the surgery if the physician had properly informed them under the standard and that the lack of information proximately caused the injury sustained and damages alleged.

9. **Malpractice: Physician and Patient: Expert Witnesses: Proof.** In medical malpractice cases, the plaintiff must usually produce expert testimony to prove a prima facie case of causation.

10. **Malpractice: Physician and Patient: Expert Witnesses.** Nebraska law recognizes an exception to the general rule requiring expert testimony in medical malpractice cases. Under the common knowledge exception, expert testimony is not required where negligence or causation may be inferred from the facts by a layperson with common knowledge and experience and with no technical knowledge.

11. **Malpractice: Physicians and Surgeons.** In medical malpractice cases, the common knowledge exception is limited to cases of extreme and obvious misconduct, such as the failure to remove a surgical instrument from a patient's body following a procedure or amputating an incorrect limb.

12. **Malpractice: Physicians and Surgeons: Expert Witnesses: Proof: Proximate Cause.** Even in medical malpractice cases where the common knowledge exception applies to eliminate the need for expert testimony to prove breach of the standard of care, expert medical testimony is almost always required to prove proximate causation, and causation may be inferred without expert testimony only if the casual link between the defendant's negligence and the plaintiff's injuries is sufficiently obvious to laypersons.

13. **Appeal and Error.** An appellate court will not address arguments that are too generalized or vague to be understood.

14.  ____. An appellate court will not consider an argument or theory raised
     for the first time on appeal because a lower court cannot commit error
     in resolving an issue never presented and submitted to it for disposition.

Appeal from the District Court for Douglas County: DEREK R. VAUGHN, Judge. Affirmed.

Theodore R. Boecker, Jr., of Boecker Law, P.C., L.L.O., for appellant.

Robert A. Mooney and Reghan R. Kort, of Mooney, Lenaghan, Westberg Dorn, L.L.C., for appellee.

FUNKE, C.J., CASSEL, STACY, PAPIK, FREUDENBERG, and BERGEVIN, JJ.

STACY, J.

Richard G. Schuemann filed this medical malpractice action against Brent D. Timperley, M.D., alleging that Timperley failed to obtain Schuemann's informed consent before performing cataract surgery. The district court granted summary judgment in favor of Timperley, and Schuemann appeals. Finding no merit to the assigned errors, we affirm.

## I. BACKGROUND

In early 2018, Schuemann sought medical treatment for vision issues and was referred to Timperley, a licensed, board-certified ophthalmologist who practices in Omaha, Nebraska. Timperley performed cataract surgery on Schuemann's left eye on March 19, 2018, and performed cataract surgery on Schuemann's right eye on April 2. During followup appointments after the surgeries, Schuemann reported experiencing blurry vision in his left eye, so Timperley performed an additional procedure on that eye. After the followup procedure, a visual acuity test showed that Schuemann's vision in each eye was better than it had been before the surgeries.

In February 2019, almost 1 year after the first cataract surgery, Schuemann sought treatment from a different physician for a retinal detachment in his right eye. Sometime thereafter,

Schuemann also experienced a retinal detachment in his left eye. Both retinal detachments required surgical repair, and neither surgery was performed by Timperley. After the 2019 retinal repair procedures, Schuemann experienced diminished vision in both eyes.

### 1. Complaint and Answer

On April 2, 2020, Schuemann filed a medical malpractice complaint against Timperley in the district court for Douglas County. As relevant to the issues on appeal, the complaint alleged that Timperley breached the applicable standard of care by failing to obtain Schuemann's informed consent before performing the cataract surgeries.

More specifically, the complaint alleged that although Timperley was aware Schuemann had previously undergone radial keratotomy (RK) procedures on both eyes, Timperley "did not address with [Schuemann] any of the particular risks and potential adverse outcomes" associated with undergoing cataract surgery after prior RK procedures. Schuemann alleged that if he had been advised of such risks, he "would not have proceeded with the cataract surgeries performed by [Timperley]." The complaint generally alleged that as a direct result of the two cataract surgeries, Schuemann suffered pain, injury, and diminished vision in both eyes.

Timperley's answer admitted that he provided medical care to Schuemann but affirmatively alleged that he met the applicable standard of care in doing so. Timperley denied all allegations of negligence, and he denied that the treatment he provided to Schuemann caused or contributed "in any way whatsoever" to Schuemann's alleged injuries or damages.

### 2. First Summary Judgment Motion

Following discovery, Timperley moved for summary judgment on a variety of grounds. At the hearing on that motion, Timperley primarily argued he was entitled to judgment as a matter of law because Schuemann's claims were barred by the applicable 2-year statute of limitations. The trial court agreed

and granted summary judgment on that basis. Schuemann appealed, and we reversed, reasoning that Timperley's answer failed to expressly raise the statute of limitations as an affirmative defense and that Schuemann's complaint was not time barred on its face.[1]

In the first appeal, Timperley urged this court to affirm based on the alternative ground that Schuemann failed to offer any expert testimony to contradict Timperley's averment that he complied with the applicable standard of care. We declined Timperley's invitation, reasoning that the alternative ground for summary judgment raised by Timperley had not been adequately presented in the trial court. In doing so, we emphasized that "[w]e are aware of nothing, however, that would preclude Timperley from properly seeking summary judgment on the alternative basis presented here after the cause is remanded to the district court."[2]

### 3. Second Motion for Summary Judgment

On remand, the district court entered a new progression order giving Schuemann until October 3, 2024, to disclose his expert witnesses. After Schuemann failed to disclose any expert witness by this deadline, Timperley filed a second motion for summary judgment on November 26, 2024.

At the second summary judgment hearing, Timperley offered his own affidavit in which he stated to a reasonable degree of medical certainty that when treating Schuemann:

• He met the applicable standard of care for physicians in the Omaha area when securing Schuemann's informed consent and when treating Schuemann.

• He "personally discussed with [Schuemann] the risks, benefits, and alternatives of cataract surgery" and "specifically discussed with him the difficulties presented by his prior [RK] procedure including the possibility that his incisions could

---

[1] See *Schuemann v. Timperley*, 314 Neb. 298, 989 N.W.2d 921 (2023).

[2] *Id*. at 310, 989 N.W.2d at 929.

open, the inaccuracies of biometry following radial kera-
totomy, and the possibility of refractive error requiring him to
wear glasses full-time."

Timperley also averred that based on his review of Schuemann's
medical records, coupled with his education, training and
experience, it was Timperley's opinion that "[Schuemann's]
complications and damages were not the result of any breach
of the standard of care on my part." In addition to his own
affidavit, Timperley offered Schuemann's discovery responses
that showed Schuemann had not identified a medical expert to
testify at trial on any issue.

   In opposing summary judgment, Schuemann offered
Timperley's discovery deposition, Schuemann's own depo-
sition, and affidavits from Schuemann and his wife. In
Timperley's deposition, he admitted that to meet the appli-
cable standard of care when obtaining Schuemann's informed
consent for the cataract surgeries, it was necessary to advise
Schuemann of the risks associated with having undergone
prior RK procedures. Timperley also testified that he advised
Schuemann of such risks. In addition, Timperley testified that
he encountered no difficulties when performing Schuemann's
cataract surgeries, that he was able to make "a normal
incision in between the RK incisions," and that none of
Schuemann's RK scars were damaged or "opened" during the
cataract procedures.

   Schuemann's deposition and affidavit, as well as his
wife's affidavit, all included statements expressly denying
that Timperley advised Schuemann about the possible risks
and complications associated with his prior RK procedures.
Additionally, in both Schuemann's deposition and his affi-
davit, he stated that if Timperley had properly advised him
of the increased risks associated with his prior RK proce-
dures, he would not have undergone either cataract surgery.
Schuemann further stated, "If I had not done either surgery, I
would not have the resulting complications from the surgeries,
including the opening of incisions from the prior RK."

### 4. Summary Judgment Ruling

On January 13, 2025, the district court entered summary judgment in favor of Timperley and dismissed the complaint in its entirety. In doing so, the court acknowledged there was a factual dispute as to whether Timperley had, or had not, advised Schuemann about the risks associated with prior RK surgeries when obtaining his informed consent for the cataract surgeries. But the court reasoned that this factual dispute was rendered immaterial because the evidence on summary judgment established a complete failure of proof on the material element of causation.[3]

The court noted that to recover on a theory of lack of informed consent, Nebraska law required Schuemann to prove that "a reasonably prudent person in [his] position would not have undergone the treatment if [he] were 'properly informed' *and that [his] injuries were proximately caused by the lack of informed consent*."[4] Focusing on the latter requirement, the court found that Timperley's affidavit established a prima facie case that Schuemann's complications and damages were not proximately caused by any breach of the standard of care by Timperley, and the court further found that Schuemann's evidence did not create a genuine issue of material fact on that issue because Schuemann offered no contradictory expert medical testimony at all. Finally, the court rejected Schuemann's contention that the "common-knowledge exception"[5] applied to make expert testimony on proximate causation unnecessary in this case. The court therefore granted Timperley's motion

---

[3] See *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023) (holding failure of proof on essential element of negligence claim necessarily renders all other facts immaterial).

[4] *Curran v. Buser*, 271 Neb. 332, 340, 711 N.W.2d 562, 570 (2006) (emphasis supplied). See, also, Neb. Rev. Stat. § 44-2820 (Reissue 2021).

[5] See *Thone v. Regional West Med. Ctr.*, 275 Neb. 238, 244, 745 N.W.2d 898, 904 (2008) (explaining common knowledge exception is limited to cases of extreme and obvious misconduct, such as failing to remove surgical instrument from patient's body or amputating incorrect limb).

for summary judgment, overruled any other pending matters, and dismissed the action in its entirety.

Schuemann filed a timely appeal, and we moved the case to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Schuemann assigns, restated, that the district court erred in granting summary judgment in favor of Timperley because (1) there was a genuine factual dispute as to whether the informed consent advisement met the applicable standard of care and (2) there was no failure of proof on the issue of causation.

## III. STANDARD OF REVIEW

[1,2] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[6] A grant of summary judgment will be affirmed if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[7]

## IV. ANALYSIS

Schuemann's negligence claim rests entirely on the theory that Timperley failed to obtain his informed consent before proceeding with the cataract surgeries. To analyze whether the district court properly granted summary judgment in favor of Timperley on that claim, we begin by recalling the statutory framework and legal principles that govern summary judgment. Then, we review the elements of a medical malpractice claim based on an alleged lack of informed consent.

---

[6] *D&M Roofing & Siding v. Distribution, Inc.*, 319 Neb. 707, 24 N.W.3d 850 (2025).

[7] See *id.*

Finally, with these principles in mind, we review de novo the evidence offered in support of, and in opposition to, summary judgment.

## 1. SUMMARY JUDGMENT PRINCIPLES

[3-5] Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[8] Under our case law, the party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial.[9] If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[10] If the burden of proof at trial would be on the nonmoving party, then the party moving for summary judgment may satisfy its prima facie burden either by citing to materials in the record that affirmatively negate an essential element of the nonmoving party's claim or by citing to materials in the record demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.[11]

## 2. INFORMED CONSENT PRINCIPLES

Schuemann's medical malpractice claim is premised exclusively on the theory that Timperley failed to obtain his

---

[8] See, *Ricker v. Nebraska Methodist Health Sys.*, 319 Neb. 628, 24 N.W.3d 344 (2025); *Clark, supra* note 3.

[9] See, e.g., *Noel v. Pathology Med. Servs.*, 320 Neb. 92, 26 N.W.3d 196 (2025); *Ricker, supra* note 8; *Clark, supra* note 3.

[10] *Id*.

[11] See, *Noel, supra* note 9; *Clark, supra* note 3.

informed consent for the cataract surgeries.[12] The Nebraska Hospital-Medical Liability Act[13] defines "[i]nformed consent" to mean "consent to a procedure based on information which would ordinarily be provided to the patient under like circumstances by health care providers engaged in a similar practice in the locality or in similar localities."[14] The same act provides:

> Failure to obtain informed consent shall include failure to obtain any express or implied consent for any operation, treatment, or procedure in a case in which a reasonably prudent health care provider in the community or similar communities would have obtained an express or implied consent for such operation, treatment, or procedure under similar circumstances.[15]

[6] Our cases hold that to assert a medical malpractice claim on a theory of lack of informed consent, a plaintiff must establish the same elements necessary to assert any medical negligence claim: (1) the applicable standard of care, (2) that the defendant(s) deviated from that standard of care, and (3) that this deviation was the proximate cause of the plaintiff's harm.[16]

### 3. Summary Judgment Evidence

#### (a) Standard of Care and Breach

Both parties relied on Timperley's testimony to establish the applicable standard of care for physicians in the Omaha area when obtaining informed consent for cataract surgery. It was undisputed that to obtain informed consent

---

[12] See *Yoder v. Cotton*, 276 Neb. 954, 758 N.W.2d 630 (2008) (explaining informed consent is typically medical negligence but constitutes medical battery when physician completely fails to obtain consent or greatly exceeds scope of consent obtained, e.g., by operating on wrong limb).

[13] Neb. Rev. Stat. §§ 44-2801 to 44-2855 (Reissue 2021).

[14] § 44-2816.

[15] *Id*.

[16] See *Thone, supra* note 5.

for the cataract surgeries, Timperley was required to advise Schuemann of the general risks and benefits of cataract surgery, as well as the specific risks associated with Schuemann's prior RK procedures.

Through Timperley's affidavit, he adduced competent medical evidence that he met the standard of care by personally discussing these risks with Schuemann. This evidence satisfied Timperley's prima facie burden by affirmatively negating an essential element of Schuemann's claim, and the burden thus shifted to Schuemann to produce evidence showing the existence of a material issue of fact that would prevent judgment as a matter of law.

Schuemann adduced competent evidence, through his own affidavit and deposition testimony, that Timperley failed to inform him of the increased risks associated with prior RK procedures. Based on that evidence, we agree with the district court that there was a genuine issue of material fact as to whether Timperley breached the applicable standard of care when obtaining Schuemann's informed consent for cataract surgery.

In connection with his first assignment of error, we understand Schuemann to argue the district court erred when it failed to find that the existence of this factual dispute, standing alone, prevented the entry of summary judgment in favor of Timperley. In rejecting this contention, the district court relied on the rule that a "failure of proof on [an] essential element . . . renders all other facts immaterial"[17] to conclude that the factual dispute about whether Timperley breached the standard of care was rendered immaterial by Schuemann's inability to establish another essential element of his claim: proximate cause. Because resolution of Schuemann's first assignment of error is tied to the success or failure of his second assignment, we turn our attention to the evidence adduced on the element of causation.

---

[17] *Clark, supra* note 3, 314 Neb. at 75, 989 N.W.2d at 57.

## (b) Proximate Cause

[7,8] In a medical malpractice claim, proximate causation requires proof necessary to establish that the physician's deviation from the standard of care caused or contributed to the injury or damage to the plaintiff.[18] The Nebraska Hospital-Medical Liability Act expressly addresses the plaintiff's burden of proof on the element of proximate cause in a malpractice action based on a lack of informed consent:

> Before the plaintiff may recover any damages in any action based on failure to obtain informed consent, it shall be established by a preponderance of the evidence that a reasonably prudent person in the plaintiff's position would not have undergone the treatment had he or she been properly informed and *that the lack of informed consent was the proximate cause of the injury and damages claimed.*[19]

We have explained that pursuant to this statute, to "prove causation, the [plaintiffs] must prove both that a reasonable person in their situation would have refused the surgery if [the physician] had properly informed them under the standard and that the lack of information proximately caused the injury sustained and damages alleged."[20]

Because the burden of proving causation at trial would be on Schuemann, Timperley could satisfy his prima facie burden on summary judgment either by offering evidence that affirmatively negated proximate cause or by offering evidence that showed Schuemann would be unable to establish proximate cause.[21] Timperley took both approaches.

Attempting to affirmatively negate the essential element of proximate cause, Timperley offered his own affidavit opining

---

[18] See *Hamilton v. Bares*, 267 Neb. 816, 678 N.W.2d 74 (2004).

[19] § 44-2820 (emphasis supplied).

[20] *Curran, supra* note 4, 271 Neb. at 340, 711 N.W.2d at 570.

[21] See, *Noel, supra* note 9; *Clark, supra* note 3.

that Schuemann's "complications and damages were not the result of any breach of the standard of care on my part." At the summary judgment stage, it is well settled that a physician's self-supporting affidavit can suffice to make a prima facie case that the physician did not commit medical malpractice.[22] And to demonstrate that Schuemann's evidence was insufficient to establish proximate cause, Timperley offered discovery responses showing that Schuemann had not designated any medical expert to testify at trial on any issue. Our cases hold that in medical malpractice cases, expert testimony by a medical professional is normally required to establish causation under the circumstances.[23]

We agree with the district court that if left uncontroverted, Timperley's opinion negating proximate cause and Timperley's citation to evidence in the record showing that Schuemann had no medical expert to testify at trial on causation were sufficient to satisfy Timperley's prima facie burden on the element of causation. The burden therefore shifted to Schuemann to show the existence of a genuine issue of fact by producing competent evidence that Timperley's lack of informed consent was the proximate cause of the injuries and damages claimed by Schuemann.

Schuemann offered his own deposition, in which he testified that "the RK scars had been compromised during the cataract surgeries." Schuemann also offered his own affidavit, in which he stated, "If I had not done either surgery, I would not have the resulting complications from the surgeries, including the opening of incisions from the prior RK." But Schuemann is not a physician and therefore is not competent to offer

---

[22] See *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018).

[23] *Simon v. Drake*, 285 Neb. 784, 829 N.W.2d 686 (2013). See, also, *Thone, supra* note 5, 275 Neb. at 250, 745 N.W.2d at 908 (stating expert testimony "is almost always required to prove proximate causation"); *Yoder, supra* note 12 (same).

a medical opinion on causation,[24] and Schuemann failed to offer any expert medical testimony on the issue of proximate cause.

On appeal, Schuemann admits that he offered no expert medical opinion to establish causation. But he contends that he did not need expert medical testimony to prove causation in this case for either of two reasons. First, he asserts that the common knowledge exception applies. Alternatively, he contends that even without an expert medical opinion on causation, he could still recover for what he describes as "self evident damage,"[25] including the "unnecessary expense and inconvenience of the surgical procedure."[26] We address each argument in turn and reject them both.

### (i) Common Knowledge Exception

[9,10] In medical malpractice cases, the plaintiff must usually produce expert testimony to prove a prima facie case of causation.[27] But Nebraska law also recognizes an exception to the general rule requiring expert testimony in medical malpractice cases.[28] Under the common knowledge exception, expert testimony is not required "where negligence or causation may be inferred from the facts by a lay[person] with common knowledge and experience and with no technical knowledge."[29]

---

[24] See, e.g., Neb. Rev. Stat. § 27-702 (Reissue 2016); *Marshall v. Radiology Assoc.*, 225 Neb. 75, 81, 402 N.W.2d 855, 859 (1987) (holding that affidavit of plaintiff's attorney was "an impermissible attempt by a lay witness to interpret medical testimony concerning negligence and, therefore, was not competent evidence").

[25] Brief for appellant at 21.

[26] *Id.*

[27] See *Green v. Box Butte General Hosp.*, 284 Neb. 243, 818 N.W.2d 589 (2012), *abrogated on other grounds, Clark, supra* note 3.

[28] See *Carrizales v. Creighton St. Joseph*, 312 Neb. 296, 979 N.W.2d 81 (2022).

[29] *Green, supra* note 27, 284 Neb. at 253-54, 818 N.W.2d at 598.

[11,12] We have cautioned that in medical malpractice cases, the common knowledge exception is limited to cases of "extreme and obvious misconduct,"[30] such as the "failure to remove a surgical instrument from a patient's body following a procedure or amputating an incorrect limb."[31] And even in cases where the common knowledge exception applies to eliminate the need for expert testimony to prove breach of the standard of care, we have explained that expert testimony "is almost always required to prove proximate causation"[32] and that "causation may be inferred without expert testimony [only] if the casual link between the defendant's negligence and the plaintiff's injuries is sufficiently obvious to laypersons."[33]

[13] Schuemann's appellate brief makes a fleeting reference to the common knowledge exception, but only to broadly assert that "it is within the common knowledge of a lay person to conclude that there would be some damage resulting from a surgical procedure to which no informed consent is provided."[34] Beyond this generalized statement, however, Schuemann's brief does not present any argument explaining how or why causation can be inferred by a layperson on the facts of this case. An appellate court will not address arguments that are too generalized or vague to be understood.[35] Schuemann's argument relying on the common knowledge exception is too generalized and vague to warrant further discussion, and we cannot find that the exception applies to the injuries and damages alleged in this case.

---

[30] See *Thone, supra* note 5, 275 Neb. at 244, 745 N.W.2d at 904.

[31] *Id*.

[32] *Id*. at 250, 745 N.W.2d at 908.

[33] *Id*. at 250-51, 745 N.W.2d at 908.

[34] Brief for appellant at 23.

[35] *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015).

#### (ii) Self Evident Damage

Alternatively, Schuemann argues that even without expert testimony to establish that his claimed injuries were proximately caused by Timperley's breach of the standard of care, he should still be allowed to recover for "self evident damage,"[36] which he contends includes "damages for the deprivation of self determination and the worry and mental stress associated with [the] procedure[s]."[37] Schuemann points to his testimony that he would not have undergone the cataract surgeries if he had been properly informed of the risks, and he relies on opinions from other states[38] to argue that such a statement is sufficient, standing alone, to withstand summary judgment on what he describes as a "'dignitary'"[39] tort. We are unpersuaded for two reasons.

[14] First, we see nothing in the record suggesting this theory was presented to the district court. Schuemann's complaint made no reference to damages based on "the deprivation of self-determination,"[40] and, instead, he expressly alleged that as a result of Timperley's negligence, Schuemann incurred medical expenses and "suffered pain, injury and loss of function including a diminution in his eyesight." An appellate court will not consider an argument or theory raised for the first time on appeal because a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.[41]

---

[36] Brief for appellant at 21.

[37] *Id*. at 23.

[38] See, *Parris v. Limes*, 2012 OK 18, 277 P.3d 1259 (2012) (holding plaintiff's assertion that he would not have undergone surgery was adequate to survive summary judgment on informed consent); *Nestor v. La. Univ. Health Sciences Center*, 917 So. 2d 1273, (La. App. 2005) (holding that absent physical injury, lack of informed consent may support recovery for mental anguish), *abrogated on other grounds, Pete v. Boland Marine and Manufacturing*, 379 So. 3d 636 (La. 2023).

[39] Brief for appellant at 23.

[40] *Id*.

[41] See *Elbert v. Young*, 312 Neb. 58, 977 N.W.2d 892 (2022).

Moreover, even assuming for the sake of argument that the complaint could be construed to seek the recovery of damages unrelated to a physical injury, the proximate cause requirement of § 44-2820 must still be satisfied with respect to such damages. Section 44-2820 requires not only proof that "a reasonably prudent person in the plaintiff's position would not have undergone the treatment had he or she been properly informed," but it also requires proof that "the lack of informed consent was the proximate cause of the injury and damages claimed." Schuemann's belated attempt to change the nature of his alleged damages does not alleviate the statutory requirement to prove proximate cause. And because Schuemann adduced no competent medical evidence to prove that the lack of informed consent proximately caused any claimed injury or damage, he is unable as a matter of law to establish a material element of his claim.

### (c) Resolution of Assigned Errors

Based on our de novo review of the record, we conclude that although the evidence established a factual dispute as to whether Timperley breached the applicable standard of care when advising Schuemann regarding the risks associated with the cataract surgeries, Schuemann's complete failure of proof regarding the essential element of proximate cause necessarily rendered all other disputed facts immaterial.[42] As such, neither of Schuemann's assigned errors has merit and Timperley was entitled to summary judgment as a matter of law.

### V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

VAUGHN, J., not participating.

---

[42] See *Clark, supra* note 3.